UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY A. PRESCOTT,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

_____/

Case No. 11-11226

Thomas L. Ludington
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 20)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On March 28, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L. Ludington referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 3). This matter is before the Court on the parties cross-motions for summary judgment. (Dkt. 14, 20).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on April 30, 2007, alleging that she became

unable to work on June 1, 1994. (Dkt. 10-5, Pg ID122). The claim was initially

disapproved by the Commissioner on August 30, 1997. (Dkt. 10-4, Pg ID 82-85).

Plaintiff requested a hearing and on December 15, 2009, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) John A. Ransom, who considered

the case *de novo*. In a decision dated February 5, 2010, the ALJ found that

plaintiff was not disabled. (Dkt. 10-2, Pg ID 43-52). Plaintiff requested a review

of this decision. (Dkt. 10-2 Pg ID 42). The ALJ's decision became the final

decision of the Commissioner when, after the review of additional exhibits[1] (Dkt.

10-2, Pg ID 34-35), the Appeals Council, on February 2, 2011 , denied plaintiff's

request for review. (Dkt. 10-2, Pg ID 31-33); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

A.    <u>ALJ Findings</u>

Plaintiff was 55 years of age at the time of the most recent administrative

hearing.  (Dkt. 10-2, Pg ID 62).  Plaintiff's relevant work history included

approximately seven years as a teacher's aide and U.S. Census enumerator.  (Dkt.

10-6, Pg ID 148).  In denying plaintiff's claims, defendant Commissioner

considered seven cervical and lumbar herniated discs; diabetes mellitus; diabetic

neuropathy, retinopathy, and foot ulcer; restless leg syndrome; depression/anxiety;

fibromyalgia; thyroid nodules; multinodular goiter; and dysphagia as possible

bases of disability.   (Dkt. 10-6, Pg ID 147).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity from

her alleged onset date of June 1, 1994 through September 30, 1995.  (Dkt. 10-2, Pg

ID 48).  At step two, the ALJ found that plaintiff's degenerative disc disease,

diabetes mellitus, fibromyalgia/Epstein Barr virus and rheumatoid arthritis were

"severe" within the meaning of the second sequential step.  *Id*.  At step three, the

ALJ found no evidence that plaintiff's combination of impairments met or equaled

one of the listings in the regulations.  *Id*.  At step four, the ALJ found that plaintiff

did not have any past relevant work.  (Dkt. 10-2, Pg ID 51).  At step five, the ALJ

denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  *Id*.

      B.    <u>Plaintiff's Claims of Error</u>

Plaintiff contends that substantial evidence does not support the hypothetical question posed by the ALJ to the vocational expert and the resulting RFC because of plaintiff's severe impairments of Epstein Barr Virus (EBV) and fibromyalgia.  Plaintiff testified that EBV made her feel "exhausted."  (Tr. 36).  She testified that on an average day she would sleep between three and five hours during the day.  (Tr. 37).  She indicated that during this time her immune system was compromised and she was getting other types of illnesses.  While her doctor assured her that EBV was transitory, her EBV titer level kept increasing during the next 18 months, i.e. 587 on 8/8/94 and 724 on 9/29/95.  (Tr. 470 and 476).

Plaintiff asserts that the RFC is devoid of any fatigue-like symptoms involved with the "severe" impairment of Fibromyalgia/Epstein Barr Virus such as the need to lie down which she claims is consistent with the evidence in this case record.  According to plaintiff, it is reversible error not to consider the necessity to lie down due to a disabling condition, i.e. *Geisz v Apfel*, 100 F.Supp.2d 463, 465 (E.D. Mich. 2000).  Plaintiff contends that there "is no substantial evidence in the record to contradict Dr. Schisler's diagnosis of Plaintiff nor his opinion that those

conditions caused Plaintiff to lay down."[2]  (Dkt. 14, Pg ID 535).  The necessity to lay down at unpredictable times during the day exceeding periods of a half hour or longer is work preclusive.  According to plaintiff, because the ALJ found that claimant has a "severe" impairment of fibromyalgia/Epstein Barr virus, there should have been some factor incorporated into the RFC so that it accurately portrayed plaintiff's physical impairments due to the EBV.  Despite testimony by the claimant and her husband and the well-known effects of fatigue that is associated with EBV, at a minimum the ALJ should have articulated one way or the other whether lying down during the day should be incorporated within the hypothetical to the vocational expert and resultant RFC.

While the ALJ acknowledged that plaintiff was diagnosed with fibromyalgia/Epstein Barr virus, plaintiff argues that the ALJ incorrectly concluded that no physician indicated the symptoms were totally disabling. Rather, plaintiff was advised by a treating physician that the symptoms would improve with time.  (Tr. 20).  Plaintiff contends that, in retrospect, her EBV titer actually increased during the next 18 months.  More importantly, according to plaintiff, merely because the doctor was optimistic that symptoms could improve

---

[2]  Plaintiff cites nothing in the record to support this statement and the undersigned was not able to locate any such opinion. Notably, "Dr. Schisler" is the treating physician identified in the case cited by plaintiff, *Geisz v. Apfel*, and does not appear to be a treating physician in the instant matter.

with time has nothing to do with the ALJ's failure to incorporate the symptom of fatigue associated with EBV in the hypothetical to the vocational expert and RFC. Plaintiff contends that due to fatigue associated with the EBV, she is not able to perform even sedentary work which requires the ability to work on a regular and sustained basis, defined as eight hours a day/five days a week or an equivalent work schedule.  (SSR 96-8p and SSR 96-9p.)  And, plaintiff points out that an elevated EVB is known to cause symptoms of fatigue.  SSR 99-2p.  At a minimum, plaintiff maintains that the ALJ should have squared the medical evidence with the testimony evidence and articulated a reason why fatigue and the necessity to lie down during the day were not incorporated within the RFC.  Since the ALJ's decision did not specifically reject the testimony of plaintiff or her husband regarding the significant restrictions in her activities of daily living as a result of the EBV and related illnesses, plaintiff asserts that this case must be remanded for further proceedings pursuant to sentence four due to a legally deficient RFC.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner first points out that plaintiff only disputes the ALJ's decision by arguing that the ALJ did not take into account her fatigue and need to lay down during the day.  The Commissioner contends that plaintiff's argument lacks merit because the ALJ explicitly recognized plaintiff's testimony that she

slept for "three to five hours during normal waking hours." (Tr. 19). At the hearing, plaintiff and her husband primarily complained that she was fatigued. The ALJ significantly credited plaintiff and her husband's testimony, given that he found plaintiff only capable of a reduced level of sedentary activity. In limiting plaintiff's residual functional capacity to a less-than sedentary level, the ALJ credited the medical evidence and plaintiff's testimony to find that plaintiff had significant functional limitations. *See* Social Security Ruling 96-9p, 1996 WL 374185, at *3. "Under the regulations, 'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations." *Id*. The ALJ further limited plaintiff's residual functional capacity by finding plaintiff could not operate air or vibrating machines. The ALJ also found plaintiff was only capable of low stress jobs.

According to the Commissioner, the ALJ reasonably discredited plaintiff's and her husband's testimony that she was incapable of a restricted range of sedentary work because of fatigue. The ALJ found further limitations unwarranted by the medical evidence. The ALJ recognized that plaintiff only received conservative treatment for her impairments. (Tr. 20). He noted that her diabetes was non-insulin dependent and was under reasonable control with medication. (Tr. 20). He recognized that there was some evidence of degenerative

disc disease, but that plaintiff had not undergone surgical consultation. (Tr. 20). The ALJ also indicated that plaintiff's treating physician advised her that her symptoms from EBV would improve with time. (Tr. 20). Additionally, the ALJ found "no evidence that prior to the date of last insured status claimant was advised to refrain from working or that any exertional limitations were placed upon her activities of daily living." (Tr. 20). *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005) ("a lack of physical restrictions constitutes substantial evidence for a finding of non-disability").

The Commissioner also contends that plaintiff's arguments regarding her Epstein Barr levels fail in multiple ways. The Epstein-Barr virus is one of the most common human viruses. *See* National Center for Infectious Diseases, Epstein-Barr Virus and Infectious Mononucleosis[3] (CDC EBV). Most people are infected with EBV sometime during their lives. *Id*. In the United States, as many as 95% of adults between 35 and 40 years of age have been infected and will have EBV antibodies. *Id*.

The Commissioner points out that when referring to the lab results regarding EBV, plaintiff selectively cites to only to the viral capsid antigen level on two of the four EBV lab tests in the record. (Pl. Br. at 4). In fact, plaintiff summarily argues her complaints of fatigue are supported by viral capsid antigen

---

[3] Available at http://www.cdc.gov/ncidod/diseases/ebv.htm.

levels that were "abnormally high" (Pl. Br. at 4) and that increased from August 1994 to September 1994. (Pl. Br. at 4, 6-7). According to the Commissioner, plaintiff offers no support for her conclusory argument. Plaintiff's lab work measured three types of EBV antibodies - the viral capsid antigen, the early antigen, and the nuclear antigen. (Tr. 467, 470, 476, 478). The viral capsid antigen only indicates a recent or past exposure to EBV. (Tr. 467, 470, 476, 478). This antigen persists for life after exposure. *See* CDC EBV. The early antigen suggests an active or recent EBV infection or re-infection. (Tr. 467, 470, 476, 478); *see* CDC EBV. Plaintiff cites only to the viral capsid antigen level, which simply indicates exposure to EBV. (Tr. 467, 470, 476, 478). Ninety-five percent of the U.S. adult population aged 35-40 has been exposed to EBV. *See* CDC EBV. According to the Commissioner, plaintiff offers nothing to support her contention that mere exposure to EBV causes disabling fatigue under the Act. Nothing in the lab results or physician notes supports plaintiff's bald assertion that her EBV viral capsid antigen levels were "abnormally high."

Plaintiff cites to SSR 99-2p to support her contention that there is a link between the presence of EBV virus and fatigue. However, SSR 99-2p concerns chronic fatigue syndrome, a condition plaintiff admittedly does not have. SSR 99-2p indicates that an EBV viral capsid antigen level at 5120, seven to ten times the level found in plaintiff's lab results, objectively supports the presence of an

impairment.  1999 WL 271569, at *3.  The ALJ did not dispute the presence of an

impairment associated with EBV.  (Tr. 18).  SSR 99-2p does not suggest that the

presence of an impairment, including chronic fatigue syndrome, necessarily

equates to a disabling impairment.  *Id*. at *5.  Instead, "the conclusion about

whether such individuals are disabled will depend primarily on the nature and

extent of their functional limitations or restrictions."  *Id*.  Given the discrepancy in

magnitude between the plaintiff's results and those in SSR 99-2p and the absence

of a per se connection between EBV and disability, the Commissioner contends

that plaintiff's conclusory argument falls short.

According to the Commissioner, plaintiff also summarily argues that the

increase of the viral capsid levels from 587 in August 1994 to 724 in September

1995 proves that her condition got worse.  Plaintiff ignores the lab results from

March 1994, a time when she was admittedly not disabled, when she had a viral

capsid level of 989.  (Tr. 478).  Even assuming that EBV viral capsid levels

indicated the severity of an individual's fatigue, the Commissioner points out that

plaintiff's condition was the worst at a time when plaintiff admits that she was not

disabled.  And, according to the Commissioner, plaintiff's argument also ignores

the April 1996 tests, which showed that plaintiff's viral capsid level remained

relatively stable from September 1995 (724) to April 1996 (786).  (Tr. 467).

The Commissioner asserts that plaintiff also completely ignores the lab

results' early antigen levels. The EBV early antigen levels indicate a recent EBV infection or re-infection.  (Tr. 467, 470, 476, 478).  *See* CDC EBV.  According to the lab results, an early antigen level greater than 1:10 indicates a recent infection in the past weeks to months.  (Tr. 467, 470, 476, 478).  Plaintiff's early antigen levels show a steady decrease from their highest level in March 1994 (1:160) (Tr. 478) to their lowest level in April 1996 (1:10) (Tr. 467).  Plaintiff's early antigen levels suggest that Dr. Baretto was correct, that her condition was transient and would improve over time.  (Tr. 390).  Dr. Baretto's counseling advice is further supported by the medical evidence.  Aside from the EBV lab tests in August 1994, September 1995, and April 1996, the Commissioner also points out that there is no mention of EBV in any of plaintiff's medical records from the insured period or after.

While plaintiff may disagree with the ALJ, the Commissioner urges the Court to concluded that the ALJ's findings were well within the zone of reasonable choices.  Because the ALJ made a reasoned and reasonable decision based on substantial evidence, the Commissioner argues that the ALJ's decision should be affirmed.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

      The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis and Conclusions</u>

The crux of plaintiff's argument is that the ALJ failed to fully credit her

need to lie down during the day as result of her EBV/fibromyalgia and include this limitation in the hypothetical question. The undersigned finds plaintiff's claim to be without merit. Contrary to plaintiff's argument, the ALJ was not required to use the chronic fatigue syndrome guidelines in SSR 99-2p. There is no medical evidence in the record that plaintiff was diagnosed with chronic fatigue syndrome. Plaintiff is correct that SSR 99-2p includes reference to an "elevated antibody titer to Epstein-Barr virus (EBV) capsid antigen equal to or greater than 1:5120, or early antigen equal to or greater than 1:640," this does not mean that everyone infected with EBV automatically is deemed to have CFS. Rather, an EBV infection falling within certain parameters is but one of the factors used to assess whether an individual is suffering from the medically determinable impairment of CFS. Moreover, as the Commissioner points out, plaintiff's EBV test results from the relevant time period do not satisfy the parameters set forth in 99-2p anyway.

Moreover, there is no documented specific requirement in the medical records that plaintiff needs to lie down during the day either periodically or as extensively as she claims. No treating source imposed this limitation on her or opined that she was restricted in this fashion. Indeed, plaintiff does not offer any opinion from a treating physician that she was more physically limited than as found by the ALJ. *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987)

("lack of physical restrictions constitutes substantial evidence for a finding of non-disability."). Plaintiff relies solely on her own testimony and her husband's statements. However, the ALJ's credibility determinations are entitled to considerable deference and the undersigned finds no basis to disturb those findings. The ALJ reasonably accommodated plaintiff's partially credited claims of fatigue by limiting her to a restricted range of sedentary work, which, as the Commissioner points out, is a very restricted RFC. *See* SSR 96-9p, 1996 WL 374185, at *3 ("Under the regulations, 'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations.").

Plaintiff also relies on *Geisz v. Apfel*, *supra* for the proposition that failure to include the need to lie down in the hypothetical question is reversible error. However, in *Geisz*, there was an uncontradicted treating physician opinion that the claimant was required to lie down during the day in order to accommodate her pain. In addition, the proof of disability in that case was strong. *Id*. at 465. The present circumstances are very different, given that no such opinion exists and there is not strong evidence supporting plaintiff's claim of disability. Thus, the undersigned finds that the ALJ's decision was well within the "zone of choice" and is supported by substantial evidence in the record.

Report and Recommendation
Cross-Motions for Summary Judgment
*Prescott v. Comm'r*; Case No. 11-11226

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 15, 2012               s/Michael Hluchaniuk
                                    Michael Hluchaniuk
                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 15, 2012 I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Lewis M. Seward, Laura A. Sagolla, AUSA, and the
Commissioner of Social Security.

                                    s/Tammy Hallwood
                                    Case Manager
                                    (810) 341-7850
                                    tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Prescott v. Comm'r*; Case No. 11-11226